CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

DEC 0 3 2008

JOHN F CORCORAN, CLERK
BY: /s/ K. Bolton
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| RENEA E. TALBERT, | Case No. 5:07CV00110 |
| Plaintiff | REPORT AND RECOMMENDATION |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | By: Hon. James G. Welsh U. S. Magistrate Judge |
| Defendant | |

The plaintiff, Renea Talbert, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying her claims for a period of disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Commissioner's Answer was filed on April 10, 2008, along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered four days later, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Although she alleges five separate assignments of error by the ALJ in her brief, they effectively present two basic contentions. First, she contends that the ALJ erred in failing to consider her testimony concerning the impact of two *non-severe* [1] medical conditions [2] as part of his step-five assessment of her residual functional capacity to do work-related activities. Second, she argues that the ALJ failed to make the two-part evaluation of her pain-related testimony required by *Craig v. Chater*, 76 F.3$^d$ 585, 595 (4th Cir., 1996). In his brief, the Commissioner contends that these determinations were made in accordance with the applicable agency regulations and that the final agency decision is properly based on substantial evidence. Each party has moved for summary judgment; no written request was made for oral argument, [3] and the case is now before the undersigned for report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

---

[1] The Fourth Circuit in *Evans v. Heckler*, held that an "impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d at 1014 (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original). *See* 20 C.F.R. § 404.1521(a) and (b) and § 416.921(a) and (b).

[2] Both in her written submissions and in her hearing testimony, the plaintiff stated that she had severe diarrhea , presumably related to her inflammatory bowel condition, which required her "[not to get] very far from a restroom." (R.409-410; *see also* R.74,92.) The plaintiff also testified that she had a "mass" on the instep of her right foot, which was scheduled to be surgically removed in October 2006 and which [prevented] her from walking without pain." (R.413.)

[3] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

2

## I. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB or SSI. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II. Administrative History

The record shows that plaintiff filed her application for DIB on May 26, 2004 and protectively filed for SSI on May 19, 2004. (R.48,53,81.) In her associated supporting disability reports and questionnaires, the plaintiff alleged that her disability began on September 1, 2003 due to functional limitations related to depression, anxiety, constant panic attacks, chronic pain, fatigue,

3

chronic diarrhea, irritable bowel disease, carpal tunnel in both hands and right elbow, chronic sleep disturbance, headaches, epigastric problems, and fibromyalgia. (R,19,53,64-65,72,74,79,91,93,95.) Her claims were denied both initially and on reconsideration, and pursuant to her timely request, an administrative hearing on her applications was held on August 24, 2006 before an ALJ. (R.17,24-45.) The plaintiff was present, testified and was represented by counsel. (R.17,46-47,400-413.) James Ryan also testified as a vocational witness. (R.17,413-418.)

Following the agency's standard five-step decisional inquiry, [4] the plaintiff's claim was denied by written administrative decision dated September 25, 2006. (R.17-23.) The ALJ concluded that the plaintiff's depression and fibromyalgia were "severe" impairments [5] within the meaning of the Act (R.19-20). He noted that the plaintiff had been seen "on many occasions by may physicians for many different complaints," however, based on his review of the record, he concluded that with the exception of her fibromyalgia her other physical complaints "were either not supported by objective testing, resolved with treatment, or of minimal consequence." (R.20.) After determining that neither her fibromyalgia nor her depression met or equaled a listed impairment in 20 C.F.R. Part

---

[4] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3$^d$ 171, 177 (4th Cir. 2001). It begins with the question of whether, during the relevant time period, the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry is a determination, based upon the medical evidence, of whether the individual has a severe impairment that has lasted or is expected to last for 12 months. 20 C.F.R. § 404.1520(c); *Barnhart v. Walton*, 535 U.S. 212 (2002). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the individual is disabled; if not, step-four is a consideration of whether the individual's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the individual from performing other work. 20 C.F.R. § 404.1520(f).

[5] See footnote 1.

404, Subpart P, Appendix 1, the ALJ concluded that the plaintiff possessed the residual functional capacity to perform light [6] unskilled work, with limited dominant hand usage, with limited general public contact, and with a sit/stand option. [7] (R.20-22.)

After issuance of the ALJ's adverse decision, the plaintiff made a timely request for Appeals Council review. (R.13,376-399.) Her request was denied (R.6-9.), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III. Facts and Analysis

The record in this case shows that the plaintiff was born in 1962 and was forty-three years of age [8] at the time of the administrative hearing. (R.32,48.) She is a graduate of the University of Texas and last worked as a marketing expert for Xerox Capital Services. (R.403-404.).

Pertinent to the issues presented by the plaintiff's appeal, her relevant medical records show that since 2003 she has repeatedly sought treatment for diffuse pain complaints and has reported

---

[6] Light work activity involves lifting no more than twenty (20) pounds with frequent lifting or carrying objects weighing up to ten (10) pounds, and a job in this exertional category generally also requires a good deal of walking or standing or, when it involves sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) and § 416.967(b).

[7] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation." *See Gibson v. Heckler,* 762 F.2d 1516, 1518 (11th Cir., 1985).

[8] Under the agency's regulations, the plaintiff is classified as a "younger person" and age is generally not considered to affect seriously such an individual's ability to adjust to other work. 20 C.F.R. § 404.1563(c) and § 416.963(c).

5

multiple pain-related diagnoses, including *inter alia* fibromyalgia, cytomegalovirus, gastritis, gastroesophageal reflux, irritable bowel syndrome, peptic ulcer disease, and possible west Nile virus, as well as panic attacks. (*E.g.*, R.110,122,127,229-230,246,258,286-287,375.) Multiple medical work-ups, however, have failed to demonstrate any significant motor or sensory deficits, any significant disc or joint disease, any abnormal abdominal or gastrointestinal condition, any bacterial disease or infection, or any malignancy. (R.113,119-120,123,160,160,172,188,200,203,210,212,215, 218,220,226,230,260,277-278,280-283, 286,355.) As Dr. Robert Saunders noted at the time he saw the plaintiff for a consultive examination in April 2005, "a review of [her] symptoms [was] too numerous to elucidate," and she "[admitted] positives to every question from each organ system . . . ." (R.288.)

Despite her assertion that she has severe daily diarrhea, the medical record shows that she in fact has no such severe intestinal condition and that she often affirmatively reported having no such abnormality. For example, in October 2003 she reported intermittent diarrhea one day and none the following day. (R.127,122.) On March 30, 2004 she reported that she usually moved her bowels every other day and only had "occasional" bouts with diarrhea. (R.229.) Similarly, on April 28 she reported no diarrhea, and on May 19, 2004 she reported having diarrhea for two days but that he bowel movements had returned to normal. (R.225,217.) In August 2004 (R.250), in February 2005 (R.319) and again in March 2006, the plaintiff's medical records show that she reported having diarrhea; however, the medical record contains no report of the condition becoming persistent on any of these occasions. (*See* R.315.) In addition, gastrointestinal studies in the Spring of 2005, including a colonoscopy and an endoscopy, failed to demonstrate any colon, esophogeal, stomach or duodenal

6

Case 5:07-cv-00110-SGW-JGW   Document 13   Filed 12/03/08   Page 6 of 12   Pageid#: 66

abnormality. (R.205-215.) Moreover, no physician has reported this to be a condition which impaired her ability to engage in work-related activities.

Although the plaintiff makes a separate argument in her brief that the ALJ "failed to evaluate [her] ulcerative colitis, nothing in the medical record demonstrates that this inflammatory colorectal condition impaired her ability to do work-related activity on a regular basis. She contends in her brief, as she did at the hearing, that this condition caused her to lose forty-five pounds over three years because of an inability to keep food in her system and causes her to experience "severe diarrhea" ten to fifteen times a day (R.409). This contention and her underlying testimony are simply inconsistent with the record. In July 2003, her recorded weight was 207 pounds. (R.106.) In May of the following year it was 206.6 pounds. (R.223.) On March 23, 2006 she weighed 199.6 pounds; the following month she weighed 203.2 pounds, and at the end of May she weighed 205.2 pounds. (R.373,388.) Three months later, in August 2006 her weight was 206.6, and on February 5, 2007 it was 207.4. (*Id.*)

Likewise, the plaintiff's contention that the ALJ failed to consider properly her chronic pain complaints is without merit. Citing *Craig v. Chater*, 76 F.3$^d$ 585, 595 (4th Cir., 1996) and *Hines v. Barnhart*, 453 F.3$^d$ 559, 565 (4th Cir., 2006), she argues that both her various pain treatments [9] and her primary care physician's statement that her pain was "chronic and severe" (R.375) constitute objective evidence of a significant chronic pain condition. First and foremost, this evidence upon

---

[9] Use of over-the-counter pain medications, a TENS unit, ice, water therapy, massage, acupuncture, and trigger point injections. (*See* R.218.)

which the plaintiff seeks to rely is not *objective* evidence of a medical abnormality explaining her pain or its intensity. *See e.g., Walker v. Bowen*, 889 F.2$^d$ 47, 49 (4th Cir., 1989); *Gross v. Heckler*, 785 F.2$^d$ 1163, 1166 (4th Cir., 1986). In addition, her reliance on *Hines v. Barnhart, supra*, is misplaced. The case simply does not support her contention that she "is entitled to rely exclusively on her subjective complaints to prove" her disabling limitations, particularly in a case such as this where the objective medical evidence is significantly inconsistent with the degree to which she claims to be functionally limited. [10]

The determination of whether an individual is disabled by pain or other alleged subjective symptom is a two-step process. At the threshold, the plaintiff must show by objective evidence the existence of an underlying medical impairment "which could reasonable be expected to produce" the alleged pain or other subjective symptom. *E.g., Jenkins v. Sullivan*, 906 F. 2nd 107, 108 (4th Cir., 1990). If the plaintiff meets this threshold evidentiary obligation, then it must be determined whether her statements concerning the intensity and persistence of her subjective symptoms are or are not consistent with the rest of the evidence. 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4); *Craig v. Chater*, 76 F.3$^d$ 585, 594-595 (4th Cir., 1996). Contrary to the plaintiff's contention, that determination is not limited to a consideration of her subjective complaints.

---

[10] To the extent the plaintiff's argument suggests the ALJ was obligated to accept her statements concerning the nature and intensity of her subjective symptoms irrespective of the absence of an objectively demonstrated medical basis, the contention is contrary to the Act itself; it is contrary to the agency's applicable regulations, and it is contrary to settled Fourth Circuit precedent. 42 U.S.C. §§ 423(d)(5)(A) and 1342c(a)(3)(G); 20 C.F.R. § 404.1529 and § 416.929; *Foster v. Heckler*, 780 F.2$^d$ 1125, 1129 (4th Cir., 1986); *Mickles v. Shalala*, 29 F.3$^d$ 918, 922 (4th Cir., 1994).

8

In the case now before the court, the ALJ expressly considered both parts of this two-step process. (R.21-22.) Acting in accordance with his decisional authority, he resolved the relevant evidentiary conflicts.[11] And his resolution of those conflicts is fully supported by substantial evidence.

Not only does the medical record fail to support the plaintiff's contention that she suffers either from chronic daily diarrhea or from severe symptoms of ulcerative colitis, but it contradicts her testimony that she has diarrhea or other severe gastrointestinal-related symptoms which significantly limit her ability to engage in work-related activities (R.409-410). Similarly, the medical record fails to support her contention that the ALJ erred in failing to consider her right foot condition to be a significant impairment of function.

She reported a right foot injury in July 2005; however, it required the use of a walking boot only "when needed." (R.372.) During the same month, she was treated for a right heel spider bite (.356-352), and the record contains no evidence that this was anything other than a transient problem which required no follow-up treatment. Although the plaintiff testified at the administrative hearing that she had been recently diagnosed with a benign fatty tumor ("a lipoma") on her right instep, it was scheduled to be removed in October 2006 (R.386,390,392,413), and the record contains no suggestion that the plaintiff was totally disabled from all work activity due to the attendant foot pain when walking. In fact the record shows the opposite. She demonstrated a continuing ability to walk

---

[11] See *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

9

with ease and to exhibit a normal posture, station and gait (R.396), and her treating physician opined that her problem with foot pain would be relieved by excision of the tumor (R.390,392).[12]

The forgoing review and analysis of the medical record is not intended to suggest that the plaintiff is free of pain, fatigue, weakness, or gastrointestinal discomfort; however, the ALJ specifically considered her symptoms and limitations which could be expected to result from her various physical problems. Therefore, it must be concluded that the Commissioner's final decision is supported by substantial evidence

## IV. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision considered adequately all of the evidence in this case;

2. The Commissioner's final decision is supported by substantial evidence;

3. The ALJ properly assessed the plaintiff's credibility;

4. The ALJ properly considered the plaintiff's testimony concerning her subjective complaints and associated functional limitations;

---

[12] Medical records submitted by plaintiff's counsel to the Appeals Council from the Free Medical Clinic of the Northern Shenandoah Valley and from Winchester Orthopaedics (R.3384-399) contain no suggestion that this condition was either severe or limited the plaintiff functionally to any significant degree, either in the short or long run.

5. The ALJ propertly considered the plaintiff's pain-related complaints;

6. The ALJ properly assessed the plaintiff's residual functional capacity;

7. The plaintiff has not met her burden of proving disability; and

8. The final decision of the Commissioner should be affirmed.

## V. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision fo the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VI. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C.

§ 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 3rd day of December 2008.

                                                     s/ *James G. Welsh*
                                             United States Magistrate Judge